Jennifer Pasquarello, Pro Se Plaintiff
Michelle Angelina, Pro Se Plaintiff
Edna Mahan Correctional Facility
30 County Rt. 513
Clinton, N.J., 08809

**UNITED STATES DISTRICT COURT**
For the District of New Jersey
Vicinage of Trenton

---

JENNIFER PASQUARELLO,
MICHELLE ANGELINA,
On Behalf of Themselves and All
Other Similarly Situated Women,
    Pro Se PLAINTIFFS

vs.

PHIL MURPHY, MARCUS HICKS/
Ms. KUHN, AL KANDELL,
PATRICIA McGILL, DEMETRIUS
MINOR, CARLOS MARTINEZ,
    DEFENDANTS

CIVIL ACTION NUMBER: 3:21-cv-18806
    ZNQ-DEA

STATE COURT DOCKET: HNT-L-000273-21

**CERTIFICATION IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER**

The *pro se* plaintiffs, Michelle Angelina and Jennifer Pasquarello, being duly sworn, do hereby appear and state:

**(1)** We are the *pro se* plaintiffs in this action, acting on behalf of the class of female inmates confined at Edna Mahan Correctional Facility, and we bring submit this certification in support of our motion for a temporary restraining order and subsequently a preliminary injunction and in opposition to the defendant's motion to dismiss the complaint for failure to state a claim.

**(2)** The plaintiffs' motion for a preliminary injunction has been pending since December 2021, with a return date that had been listed for January 2022 by the court clerk. This certification is written on the date of April 7, 2022, nearly three months AFTER the motion's return date. We are very concerned about the fact that the court has failed to render a ruling on our motion even though the danger to women at EMCFW remains acute.

**(3)** Since the complaint was removed to federal court by the defendants, other major events have transpired which underline the danger to women at EMCFW from the presence of pre-operative male-to-female alleged transgender inmates being housed in general population at EMCFW. The plaintiffs

incorporate by reference each and every factual allegation set forth in the verified complaint and reiterated in this certification.

**(4)** The Edna Mahan Correctional Facility for Women (hereinafter "EMCFW") is a New Jersey Department of Corrections (hereinafter "NJDOC") state prison, located in Clinton Township, N.J., and is designated as the place of confinement for women sentenced to terms of imprisonment under N.J.S.A. 30:4-154.

**(5)** At all times during the events complained of here, named plaintiffs Jennifer Pasquarello and Michelle Angelina were and are New Jersey state prison inmates confined at the EMCFW and subjected to the violations and deprivations complained of herein.

**(6)** At all times relevant hereto, defendant Phil Murphy was the governor of the State of New Jersey, and in that capacity was responsible for the management of the executive branch of state government, including the NJDOC. New Jersey Constitution, Article V, Section 1, Par. 11.

**(7)** Defendant Phil Murphy is also at least partly responsible for conceiving, devising and/or implementing all policies of the executive branch of state government, including the decision to transfer male allegedly transgender inmates to EMCFW.

**(8)** At all times relevant hereto, defendant Marcus Hicks and his successor Victoria Kuhn was/were the Commissioner of NJDOC, and was responsible to perform, exercise and discharge the functions, duties and powers of that office to "formulate, adopt, issue and promulgate, in the name of the department, such rules and regulations for the efficient conduct of the work and general administration of the department" and to "determine all matters of policy and regulate the administration of the institutions within his jurisdiction. N.J.S.A. 30:1B-6.

**(9)** Defendants Marcus Hicks/Victoria Kuhn is/are also responsible for the care, custody and treatment of prison inmates confined in NJDOC prisons.

**(10)** Defendants Marcus Hicks/Victoria Kuhn is/are also at least partly responsible for conceiving, devising and/or implementing the decision to transfer pre-Operative male allegedly transgender inmates to EMCFW.

**(11)** At all times relevant hereto, defendant Al Kandell was an employee within the Office of Director of the Division of Operations within NJDOC, and was responsible for operation and supervision of the operation of NJDOC facilities within the NJDOC.

**(12)** Defendant Al Kandell and was/is responsible for the implementation of the NJDOC policy to transfer pre-operative male alleged transgender inmates to EMCFW.

**(13)** At all times relevant hereto, defendant Patricia McGill, and her successor(s), including Erica Stem, was/is the Administrator of the Edna Mahan Correctional Facility and is responsible for the care, custody, health and safety of all inmates committed to the Edna Mahan Correctional Facility (hereinafter "EMCFW").

**(14)** At all times relevant hereto, defendant Demetrius Minor, a/k/a "Demi," was a New Jersey prison inmate with male genitalia claiming to be transgender, confined at EMCFW during the events alleged in the complaint.

**(15)** At all times relevant hereto, defendant Carlos Martinez, a/k/a "Royal Essence," was a New Jersey prison inmate with male genitalia, claiming to be transgender, confined at EMCFW during the events alleged in this complaint.

**(16)** In the year 2019, an inmate named Danielle Demers was transferred to EMCFW from the Northern State Prison, as part of the settlement of a lawsuit. Inmate Demers is/was a pre-operative male-to-female transsexual person and possesses male genitalia.

**(17)** In August 2020, six more pre-operative male-to-female alleged transgender inmates were transferred to EMCFW from various men's prisons. These inmates were Jermaine Gibson, Vernon Smith, DeVonte Scott, William Baberick, Demetrius Minor and Darryl Graves. In the month of October 2020, Inmate Raequan Rollins became the next such transferee.

**(18)** In February 2021, Inmates Harry Wilkins and Carlos Martinez were also transferred to EMCFW from men's prisons. They are also pre-operative male-to-female alleged transgender inmates. All these inmates have male genitalia. Subsequently, other male alleged transgender inmates have been transferred to EMCFW.

**(19)** All these transfers were made without any preparation of or counseling to the women at EMCFW.

**(20)** Many of the male alleged transgender inmates came from administrative segregation or management control units in the male prisons, have extensive problematic disciplinary histories, and were unleashed into general population when arriving at EMCFW.

**(21)** The criteria employed by NJDOC officials to effect and select male inmates for transfer to EMCFW is unknown to plaintiffs, but is believed to be based upon self-identification by male inmates upon their intake at NJDOC facilities under such vague and amorphous designations as "gay," "bi-sexual," "transgender," "gender non-specific" and "vulnerable."

**(22)** Each of the alleged male transgender inmates was placed in a single cell at EMCFW in the North Hall housing unit and the women who had been assigned to those cells were moved to a different dormitory-style housing unit.

**(23)** Some of the women who were moved had much longer sentences to serve within NJDOC custody than did the male transsexual inmates.

**(24)** Only some of the housing units at EMCFW contain single cells for the inmate population; many of the housing unit contain dormitory style housing with cubicles that contain two or three bunks and far less storage space for the inmate's property, along with no private commode.

**(25)** The presence of the male alleged transgender inmates at EMCFW has resulted in changes in the operation of the facility. For example, an extra corrections officer was assigned to work in the housing units where the male inmates are housed, reducing privacy of the women because the officers walk

the wings more frequently. More frequent cell checks are performed by the officers. Recently, more drastic measures were enacted as explained later in this certification.

**(26)** At least three women who had been housed in the North Hall unit (R.G., L.B. and S.F.) were transferred to the Stowe dormitory-style unit because they were perceived to have become too friendly with the male transsexual inmates. The male inmates have never been moved because of perceived undue familiarity with women.

**(27)** In the housing units at EMCFW where no male transsexual inmates are housed, there has been no change in the number of assigned officers who work in those units.

**(28)** The presence of the male transsexual inmates at EMCFW has exposed the women housed in that prison to an increased risk of sexual assault and violent physical assault.

**(29)** On the date of November 3, 2020, one of the male alleged transsexual inmates (Raequan Rollins) engaged in a violent physical altercation with two of the women in the North Hall unit, requiring correctional staff to respond to the emergency, shut down the prison temporarily, and resulting in injuries to one of the women.

**(30)** On October 21, 2020, two of the male transgender inmates (Darryl Graves and Jermaine Gibson) engaged in a physical altercation with each other in the North Hall unit, requiring correctional staff to respond and resulting in a lockdown of the prison.

**(31)** At a time and date uncertain, two of the male transsexual inmates (William Baberick and Raequan Rollins) engaged in a physical alteration in the South Hall unit while they were confined in RHU status, requiring correctional staff to respond and causing a lockdown of the prison. The women who were in the activity module with these inmates were exposed to the danger of physical injury and use of chemical spray by custody staff.

**(32)** On or about November 15, 2020, one of the male transgender inmates (W.B.) was involved in an attempt to entice a female inmate in the North Hall unit to enter the shower at the same time W.B. was using the shower for the purposes of engaging in sexual activity.

**(33)** This incident in part caused prison officials to install additional video cameras in the North Hall unit to monitor the shower entrances and laundry rooms on the wings to deter such activity in the future.

**(34)** On March 28, 2021, at approximately 6:40 PM, Inmate T.H., a female inmate, was observed sneaking down the wing in the North Hall unit where male transgender inmate Demetrius Minor was assigned and entering the cell of the male inmate, for the purpose of engaging in sexual activity. The same pair of inmates were later observed entering a hopper closet together on the South Wing of the North Hall unit.

**(35)** On or about April 2, 2021, a female inmate was observed in the North Hall, South Wing, recreation room engaged in sexual activity with male transgender inmate Demetrius Minor.

**(36)** Male alleged transsexual inmate Demetrius Minor has also been observed kissing the same female inmate while engaged in recreational activity in the North Hall gymnasium.

**(37)** On the date of April 20, 2021, a female inmate and transgender male inmate Demetrius Minor were observed in the North Hall, South Wing dayroom between 6 PM and 8 PM, with the female inmate performing fellatio on Minor's penis.

**(38)** One of the male transsexual inmates (Demetrius Minor) was permitted to wander around the maximum security compound at EMCFW until April 2022, with few restrictions despite being assigned to a prison job in the South Hall unit and despite this compound being designated as maximum/medium custody and inmate movements being strictly controlled. For example, this inmate took the garbage from the North Hall unit (his former place of residence) even though he was specifically ordered not to do so by a former supervisor of that unit. By contrast, none of the female inmates at EMCFW are permitted such unrestricted freedom of movement.

**(39)** Two of the male alleged transgender inmates, Demetrius Minor were permitted by custody staff to "volunteer" for work details to which they were not assigned, a privilege not accorded to female inmates at EMCFW.

**(40)** Another of the male alleged transgender inmates (Danielle Demers) was assigned to the B Cottage unit in the minimum custody section of EMCFW and caused disruptions to the operation of that unit by slamming doors, refusing to work, refusing to attend medical appointments at the medical clinic and acting like a privileged individual. Inmate Demers has escaped disciplinary action despite this obstreperous conduct.

**(41)** The male alleged transsexual inmates are able to view female inmates at EMCFW in various stages of undress in their cells (such as when using the toilet) or when walking to the shower in housecoats to shower themselves. For example, two of the male transsexual inmates (William Baberick and Raequan Rollins) have been witness leering at and making sexually derogatory remarks to women in the RHU unit when those women are engaged in showering, as well as shouting sexually derogatory remarks to women in the RHU and other units.

**(42)** Many of the women at EMCFW have religious beliefs against exposing their partially clad or unclad bodies to members of the opposite sex and are inhibited from using the toilet or showering because of fears of being seen in an undressed condition by the male inmates. The presence of the male inmates has imposed a substantial burden on the exercise of their religious beliefs.

**(43)** Due to their masculine height (most are at least six feet tall or taller), the male inmates can see into the windows in the doors of the women In North Hall at EMCFW when the women are seated on the toilet in their cells.

**(44)** The male transsexual inmates in North Hall engage in activities such as trying to intimidate and bully female inmates and threatening to write

baseless complaints against the women under the Prison Rape Elimination Act (PREA) in order to get the women moved to another housing unit in order to stifle the women and keep them from voicing and writing complaints to administration about inappropriate conduct by the male inmates.

**(45)** Women at EMCFW who voice objection to the presence of male inmates in EMCFW are intimidated by the male inmates, who complain about alleged "misgendering" in an attempt to get the objecting women moved.

**(46)** At least two of the women at EMCFW have been retaliated against by male alleged transsexual inmate Demetrius Minor, who wrote unfounded and contrived accusations of misconduct to prison administration about them, which required custody staff to conduct investigations which included taking the women to the EMCFW hospital for a physical examination and interview and, for one woman, K.H., placement in Temporary Close Custody (TCC) status while an investigation was conducted. Both complaints were determined to be unfounded. No disciplinary action was taken against Minor for lying or perpetrating a fraud.

**(47)** Most of the male alleged transsexual inmates have a distinctly masculine appearance, have facial hair, carry themselves as men, have deep male voices, and give little indication of transitioning to women through Gender Reassignment Surgery (GRS). The large physical size of these male inmates is itself intimidating to the women at EMCFW.

**(48)** One of the male transsexual inmates (William Baberick) has engaged in misconduct which includes kicking open the shower door in the RHU (physically damaging the mechanism) and smashing the plexiglass windows in two cell doors in RHU, demonstrating his masculine strength.

**(49)** Several of the male alleged transgender inmates (Carlos Martinez, Raequan Rollins and William Baberick) have or had stopped taking estrogen hormones at EMCFW, indicating that their desire to under GRS is not sincere, in addition to pursuing the female inmates.

**(50)** Another of the male alleged transsexual inmates (Raequan Rollins) has been heard yelling derogatory sexual remarks out the window of his cell in the South Hall unit. On one occasion, Raequan Rollins spoke of having forcible anal intercourse with the harassed person; on another occasion, R.R. threatened to spit in the face of female inmate L.N. and also made a sexually derogatory remark about L.N.'s genitals. No disciplinary action was taken against Rollins for these actions.

**(51)** Another male alleged transsexual inmate (Harry Wilkins) made derogatory remarks to female inmate L.N. on multiple occasions, calling L.N. "old bitch."

**(52)** On or about the date of May 7, 2021, male alleged transsexual inmate Demetrius Minor threatened plaintiff Michelle Angelina at EMCFW with physical assault, threatening to "beat the sh** out of" Angelina, placing Angelina in fear of bodily injury, and causing hypertension, loss of sleep, and anxiety/depression.

(53) On the date of April 23, 2021, male alleged transgender inmate Carlos Martinez threatened to physically assault, to wit "beat the sh** out of" plaintiff Jennifer Pasquarello outside the North Hall unit, causing Pasquarello to suffer fear, anxiety, hypertension and loss of sleep.

(54) On another occasion in October or November 2020, male alleged transgender inmate William Baberick exposed his genitals to female inmate Jennifer Pasquarello in the North Hall, South Wing housing unit, causing shock and mental anguish to Pasquarello.

(55) On the date of April 25, 2021, two of the male alleged transgender inmates, Darryl Graves ("Desjonte Would") and Carlos Martinez, engaged in a confrontation in the North Hall unit, which involved shoving and derogatory language, causing the unit to be locked down while custody staff responded, and endangering the safety of the women in that unit.

(56) On the morning of April 26, 2021, male alleged transgender inmate Carlos Martinez made derogatory comments to female inmate L.N., calling L.N. "an old bitch" and causing emotional trauma, fear and insomnia in L.N.

(57) On or about the date of April 12, 2021, male alleged transgender inmate Raequan Rollins verbally threatened to sexually assault (rape) female inmate L.C. in the South Hall MCU unit, causing severe emotional trauma, and distress and insomnia in L.C.

(58) On or about the date of May 8, 2021, male alleged transgender inmate Carlos Martinez made numerous derogatory remarks of a sexual and antisemetic nature to plaintiff Michelle Angelina in the North Hall unit, only a few days after Carlos Martinez threatened to physically assault ("beat the sh** out of") female inmate Jennifer Pasquarello, causing severe emotional trauma, hypertension, and insomnia in Pasquarello.

(59) On the date of May 21, 2021, male alleged transgender inmate Carlos Martinez did voice comments of a sexually harassing nature to female inmate L.R., including a statement that L.R. would pay money to have sexual relations with Carlos Martinez' penis and later make a false allegation under PREA to prison officials stating that L.R. offered Martinez money to have sexual intercourse.

(60) On the date of June 14, 2021, alleged male transgender inmate Carlos Martinez physically assaulted male alleged transgender inmate Jermaine Gibson during a scuffle in the North Hall housing unit at approximately 9:00 P.M. This incident endangered the safety of female inmates in that unit and required a response from custody staff.

(61) Cisgender female inmates at EMCFW have been disciplined and/or investigated on at least four or five occasions since October 2020 for conduct or speech that allegedly is demeaning or insulting to the male alleged transgender inmates, while not a single male alleged transgender inmate has been disciplined for conduct or speech that is demeaning, threatening, or insulting to the cisgender female inmates.

(62) On the date of August 16, 2021, male alleged transgender inmate Raequan Rollins did create a major disciplinary problem in the South Hall unit at

EMCFW by acting out, throwing objects, injuring a staff member and causing a "code 33" to be called that resulted in the entire prison being locked down while officers responded to the emergency. This action by R.R. caused severe disruption to the operation of the prison and endangered safety of others.

**(63)** The disparate treatment between the male and female inmates at EMCFW and the privileged treatment demonstrated by staff toward to male inmates is the product of intentional discrimination by the defendants because of the defendant's desire to accommodate the male alleged transgender inmates.

**(64)** Many of the women at EMCFW have been the victims of physical and sexual assault by men prior to their incarceration, and the presence of the male inmates has caused emotional trauma and flashbacks to traumatic events for these women, causing loss of sleep, fear and anxiety among the women.

**(65)** No statutory or decisional authority known to plaintiffs has held that the placement of male inmates in a female housing unit (or placing female inmates in a male housing unit) passes constitutional muster. N.J.S.A. 30:4-154 creates an expectation that **women** will be confined at EMCFW, not men. N.J.S.A. 30:4-8.7 states that the commissioner "shall not confine a female inmate in the same correctional facility as a male inmate if that confinement subjects the female inmate to conditions more oppressive or restrictive than conditions to which the male inmate is subjected. N.J.S.A. 30:4-90 states: "No transfers shall be made which will conflict with established age or sex limitations." These statutes are being violated by the defendants.

**(66)** Federal court decisions have also indicated that it is inappropriate and violative of constitutional rights to house female inmates in a men's housing unit.

**(67)** The male alleged transgender inmates at EMCFW have been permitted to acquire and wear special clothing, including male underwear, a privilege denied to the women confined at EMCFW.

**(68)** As a result of the placement of male transgender inmates at EMCFW, many of the women class members have suffered anxiety, loss of sleep, depression, have consciously avoided being around the male inmates (even to the point of foregoing recreational activities or other prison programs) because of concerns for their physical safety and fears of verbal harassment.

**(69)** One of the women at EMCFW (P.P.) who voiced fear of being housed in the same unit as the male transsexual inmates (P.P.) was moved to the Stowe unit despite having decades to serve on her prison sentence.

**(70)** While women are uprooted and moved the male transsexual inmates, many of whom have short prison sentences, are confined in the Maximum Security North Hall unit.

**(71)** On the date of June 10, 2021, several inmates in the North Hall and South Hall units were told that their cells would be double-bunked in cells that measure only 7 X 11 feet and have only about 35 square feet of floor space in cells lacking air conditioning, while all male alleged transsexual

inmates would be housed in single cells (except for those who are required to be double-celled for medical or psychiatric reasons). The square footage of the cells at EMCFW already falls below the minimum 65 square feet required by the United Nations Standard Minimum Rules for Treatment of Prisoners and Nelson Mandela Rules.

**(72)** On or about the date of June 17, 2021, male alleged transgender inmate Demetrius Minor appeared in the Max law library, and produced a classification document which indicated that Demetrius Minor was to be classified as "ILA volunteer" to work in the law library, despite Demetrius Minor already being assigned to another prison job for which Demetrius Minor gets paid, and despite the fact that Minor. was not an accredited paralegal at EMCFW. This classification document was authorized by EMCFW Assistant Administrator (now Administrator) Stem.

**(73)** The classification of Inmate Demetrius Minor was not done in compliance with the provisions of N.J.A.C. 10A:6-2.12(c), which requires the Supervisor of education to interview and evaluate each candidate for a paralegal position and submit a written assessment and recommendation to the Classification Committee.

**(74)** Male alleged transgender inmate Demetrius Minor obtained his job in the EMCFW max law library through deceit and manipulation, telling EMCFW and DOC administration that the female paralegals were "hostile" to the transgender population and that "there were complaints" about the work of those female paralegals, when in fact their quality of work was excellent and when those female paralegals had attained very favorable results for the male alleged transgender inmates during numerous disciplinary proceedings for infractions (committed by the male inmates.

**(75)** The favoritism and special treatment given to Inmate Demetrius Minor as opposed to the female inmates at EMCFW is the product of intentional discrimination by the defendants in favor of the male alleged transgender inmates and against the female inmates.

**(76)** Numerous female inmates have expressed reluctance to enter the max law library to discuss their legal problems in front of Demetrius Minor and the presence of this inmate is creating stress and impeding the functioning of the law library and endangering the right of court access for those female inmates.

**(77)** Because of the constant presence of the male alleged transgender inmate Demetrius Minor in the EMCFW max law library, female inmates became hesitant and reluctant to visit the law library to do and discuss their legal work because their concerns about confidentiality and privacy not being maintained.

**(78)** On the date of August 31, 2021, male alleged transgender inmate Raequan Rollins caused a serious disturbance in the South Hall unit at EMCF, requiring custody staff to respond, shutting down all movements for more than nine hours and causing the female inmates to be unable to participate in their regular movements and activities.

(79) On the date of September 1, 2021, male alleged transgender inmate Raequan Rollins engaged in a violent fight with a female inmate in the South Hall unit, resulting in a prison-wide shutdown and requiring a correctional staff response that endangered the safety of staff and female inmates, as well as injuries to the female inmate with whom R.R. was fighting.
(80) On the date of September 10, 2021, male alleged transgender inmate Quagee Gibbons seriously assaulted a staff member at EMCFW, inflicting injuries which resulted in bleeding, and causing a lockdown of the facility for an extended time while custody staff responded to the emergency.
(81) Later on the date of September 10, 2021, male alleged transgender inmate Carlos Martinez was involved in a physical altercation with a female inmate, causing a lockdown of the prison while custody staff responded to the emergency.
(82) On the date of October 6, 2021, plaintiff Michelle Angelina was the victim of yet another false allegation by male alleged transgender inmate Demetrius Minor, who falsely claimed that the plaintiff has made derogatory remarks about transgender inmates.
(83) All defendants acted with deliberate indifference to the risk of harm the plaintiffs have suffered and will suffer as a result of the defendants' actions.
(84) The violations of the federal and state constitutional rights of the plaintiffs and class members remain ongoing as of the filing of this complaint and damages continue to accrue.
(85) The actions of the defendants have created a pervasive risk of harm to the safety of the plaintiffs and class members, i.e., the risk of physical and sexual assault by the male alleged transgender inmates.
(86) All defendants are aware of the pervasive risk of harm faced by the plaintiffs and class members, but have done little or nothing to alleviate the problem and have displayed deliberate indifference toward the pervasive risk of harm faced by plaintiffs and class members.
(87) There are no rules and regulations codified in the New Jersey Administrative Code Title 10A that authorizes or sets criteria or procedures for the eligibility, selection and transfer of pre-Operative alleged transsexual inmates from a men's prison to the EMCFW, nor from EMCFW to a men's prison.
(88) Subchapter Seven of Chapter Nine, the section within the 10A of the Administrative Code governing procedures for inter-institutional transfers, mentions nothing about male pre-operative transgender or transsexual inmates being transferred to a women's prison.
(89) The actions of the defendants in transferring male pre-operative transgender inmates to EMCFW is not authorized by the regulations governing inmate classification, nor any statutes governing operation of NJDOC.
(90) On or about the date of April 22, 2021, at approximately 12:15-12:30 PM, while walking back to her assigned North Hall housing unit after receiving medication at the EMCFW hospital, plaintiff Jennifer Pasquarello

was approached in a threatening manner and verbally threatened by Inmate Carlos Martinez who was also going on the same medication inmate movement, to wit: Martinez told plaintiff Pasquarello that Martinez would "beat the sh** out of her."

**(91)** Inmate Carlos Martinez threatened to assault plaintiff Pasquarello after plaintiff Pasquarello had requested that Carlos Martinez not intercede in a private conversation between Pasquarello and plaintiff Michelle Angelina, and female inmates E.L and D.A.

**(92)** On the same return trip to the North Hall unit on the same date and time, Inmate Carlos Martinez initiated a second verbal confrontation, approached plaintiff Pasquarello in a threatening manner and only the intercession of a corrections officer prevented a physical assault by Inmate Carlos Martinez against plaintiff.

**(93)** As a result of being threatened, plaintiff Pasquarello suffered and continues to suffer physical symptoms such as headaches and hypertension and suffers severe mental anguish, fear and apprehension, and insomnia.

**(94)** On April 27, 2021 at 10:30 AM, plaintiff Pasquarello was seen by mental health expert Dr. Reed because of the mental anguish inflicted by Inmate Martinez. During this interview, plaintiff Pasquarello told Dr. Reed about having witnessed Inmate Demetrius Minor kiss Inmate Tatiana Harrison in an unrelated incident. Dr. Reed immediately reported this allegation by making a complaint under the Prison Rape Elimination Act (PREA) protocols. Dr. Reed did not attempt to assuage the mental anguish or pain of plaintiff Pasquarello, nor did Dr. Reed report the harassment and threats suffered by plaintiff Pasquarello to prison authorities.

**(95)** During the week of May 10-May 14, 2021, plaintiff Pasquarello was summoned to interview with the Special Investigations Division (SID) at EMCFW because of false allegations about alleged sexual activity between plaintiff Pasquarello and plaintiff Michelle Angelina at EMCFW, as well as due to the aforementioned incident involving Inmate Carlos Martinez.

**(96)** On the date of May 13, 2021 or May 14, 2021, plaintiff Pasquarello met with Mental Health expert Dr. Rafelson and expressed frustration and anger not only at Inmate Carlos Martinez' verbal harassment and threats, but also the actions of Inmates Minor and Harrison and their harassment and threats.

**(97)** On the date of May 13, 2021 or May 14, 2021, plaintiff Pasquarello met with Mental Health expert Dr. Reed and expressed her anger and frustration at Inmates Martinez, Minor and Harrison because of harassment and threats made by those inmates toward plaintiff Pasquarello and plaintiff Angelina.

**(98)** On the date of May 18, 2021 at approximately 3:30 PM, plaintiff Pasquarello was summoned by the SID investigators and told that Inmate Carlos Martinez had made an allegation that plaintiff Pasquarello had made sexual proposals toward Inmate Carlos Martinez. Plaintiff Pasquarello was given a body assessment and held in a segregated cell at the EMCFW hospital for more than two hours due to this blatantly false allegation by inmate

Carlos Martinez, where she suffered mental anguish, and another bout of hypertension.

**(99)** On the date of May 14, 2021 at approximately 5:55-6:30 PM, plaintiffs Jennifer Pasquarello and Michelle Angelina were seated in the North Hall unit day room and engaged in private conversation when Inmates Demetrius Minor, Carlos Martinez and Tatiana Harrison entered the same day room, approached plaintiffs in a threatening manner, sat at the same table as that occupied by plaintiffs, and engaged in verbal abuse, made threats and harassed plaintiffs. This verbal abuse included threats by Inmate Minor to physically assault plaintiffs, to wit: Minor threatened to "beat the sh** out of" plaintiff Angelina and threatened to physically assault plaintiff Pasquarello. This incident inflicted mental pain and anguish upon plaintiffs and resulted in still more physical distress in the form of headaches, hypertension and insomnia.

**(100)** Defendant Demetrius Minor made these threats based in part upon plaintiffs having reported a previous incident in April 2, 2021, in which Minor was observed engaging in heterosexual intercourse with a female inmate in the housing unit.

**(101)** Plaintiff Pasquarello learned that inmates Minor, Harrison and Martinez had been made aware that plaintiff Pasquarello had disclosed to Dr. Reed on the date of April 27, 2021, the complaint about witnessing a kiss between Inmates Minor and Harrison, and that this disclosure was a motivating factor in the actions of Inmates Minor, Harrison and Martinez.

**(102)** The information related to plaintiff Pasquarello's disclosure of seeing inmates Minor and Harrison kissing was disclosed to inmate Minor by staff member Sgt. Iglesias.

**(103)** On the date of June 4, 2021 at approximately 12:00 PM, defendant Carlos Martinez was moved by EMCFW classification/administration to the very same wing in the same unit wherein plaintiff Jennifer Pasquarello was housed, and placed Martinez in a cell right beside that occupied by plaintiff Pasquarello, despite being aware that Martinez had voiced threats to perpetrate physical violence upon Pasquarello and otherwise harassed and abused plaintiff Pasquarello. Plaintiff Pasquarello was moved off that wing only after suffering still more emotional anguish and suffering and complaining to custody staff. Martinez is still housed in the same unit as plaintiffs Pasquarello and Angelina.

**(104)** On the date of July 20, 2021, at 12:00-12:15 PM, defendant Carlos Martinez entered the dayroom in the North Hall unit when plaintiff Michelle Angelina was in that room, and screamed loudly at plaintiff that Martinez would "beat the sh** out of" Angelina. C.O. Alvarez witnessed part of this and entered the room to stop the verbal tirade. Plaintiff Angelina again suffered emotional anguish, difficulty in sleeping, loss of appetite and other symptoms.

**(105)** Defendants Marcus Hicks/Victoria Kuhn and Patricia McGill are responsible for the placement of defendant Carlos Martinez and Demetrius

Minor in the prison general population at EMCFW and the North Hall unit despite knowing of the two inmates' unsuitability for placement therein due to their possessing male genitalia, making sexual and violent threats against female inmates at EMCFW, as well as their propensity for violence.

**(106)** Defendants Carlos Martinez and Demetrius Minor, jointly and severally, are responsible for making direct physical and sexual threats against plaintiffs and the intentional infliction of emotional distress upon the plaintiffs.

**(107)** The conduct, harassment and serious threats voiced by defendants Minor and Martinez were outrageous in nature, extreme in degree, and go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

**(108)** Defendants Marcus Hicks/Victoria Kuhn and Patricia McGill did nothing to address multiple grievances and complaints about the placement of male inmates at EMCFW and the danger those inmates posed to the existing female inmate population.

**(109)** Defendants Marcus Hicks/Victoria Kuhn and Patricia McGill, jointly and severally, have disregarded and ignored State law, to wit: NJSA 30:4-154, (by classifying and housing male inmates at the EMCFW); and NJSA 30:4-90, (which states that no transfers of inmates shall be made which conflict with established age or sex limitations [of NJSA 30:4-154}, by moving male inmates to EMCFW).

**(110)** Defendants Marcus Hicks/Victoria Kuhn and Patricia McGill failed to take action to remediate the danger and risk to plaintiffs despite the fact that the risk of danger to plaintiffs was reasonably foreseeable based upon the presence of male inmates in a women's correctional facility who demonstrated a prior history of harassing and threatening behavior and who demonstrated a propensity for violence.

**(111)** On or about the date of March 16, 2022, male alleged transgender inmate Zachery Hoger acted out in a violent episode with the South Hall housing unit at EMCFW. Inmate Hoger began screaming curses and threats, pounding at the door and walls of Hoger's cell with some object as if trying to break out of the cell, and refused to stop for more than an hour. This incident required correctional staff to respond by using physical force (including chemical agents) to subdue Hoger, and resulted in the suspension of inmate movement within EMCFW for several hours between 4:00 PM and 7:00 PM. Hoger was served with multiple disciplinary charges for the behavior.

**(114)** On the date of April 5, 2022, male alleged transgender inmate Demetrius Minor (a defendant in this action) and a female inmate were removed from the general population South Hall unit at EMCFW and placed in close custody units after it came to the attention of prison officials that the female inmate had become pregnant, apparently with Minor's child. As of the writing of this certification, it is unknown to plaintiffs whether either or both inmates will be/have been served with disciplinary charges related to the sexual activity that led to the pregnancy.

**(115)** On the date of April 7, 2022, it was determined that a second female inmate who resided on the same wing as defendant Demetrius Minor had become pregnant after engaging in sexual intercourse with Minor. Only after these pregnancies came to light was Minor removed from the general prison population at EMCFW. Other pre-operative male-to-female alleged transgender inmates continue to remain in the general population and some are sexually active with other inmates. Other such inmates such as Desjonte Would (Daryl Graves) have threatened female inmates with physical harm.

**(116)** Within the past several months, two male inmates have been transferred to EMCFW who have NEVER claimed to identify as women and never claimed to be transgender. One inmate, Brandon Heaton, is a convicted sex offender who was serving time at the Adult Diagnostic & Treatment Center (ADTC), was released on parole, and is presently confined for a parole violation. This individual has been observed acting in a very friendly manner with a female inmate in the North Hall unit at EMCFW, sitting together often and interlocking their arms. The other male inmate is Jimmy Brooks, who claims to be a homosexual male and has a full beard. Neither inmate identifies as female or transgender and neither is being treated with estrogen hormones. Both inmates are housed in the general population North Hall unit at EMCFW.

**(117)** The sexual activity between defendant Demetrius Minor and the female inmate, and the transfer to EMCFW of male inmates who make no pretentions of identifying as female and who are not transgender at all, are the latest episodes of what the plaintiffs have been concerned about resulting from the presence of pre-operative alleged transgender male-to-female inmates at EMCFW. Plaintiffs have long believed that many if not most of the male inmates are faking their claims of being "gender non-conforming" or of "identifying" as women merely to manipulate their way from a male prison to EMCFW because they want to engage in sexual relations with female inmates and/or because they perceive EMCFW as an "easy" place to serve their sentence.

**(118)** Plaintiffs are concerned that the NJDOC is no longer adhering to its original stated principle of trying to ensure the safety of alleged transgender inmates by this process of transferring male inmates to EMCFW, and is now expanding the categories of male inmates eligible for such transfers. This practice will in turn open the floodgates to turn EMCFW into a male prison which happens to have a small population of women instead of the female prison it is supposed to be.

**(119)** The PREA regulations which the defendants seem to rely upon mention nothing about housing non-transgender male inmates in a female prison. For example, 28 C.F.R. Section 115.42(c) states in plain language "In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems." This section says nothing about

homosexual male inmates or allegedly "vulnerable" male sex offenders. The section also permits the NJDOC to DENY OR REFUSE to transfer male inmates to EMCFW if such a transfer would create management or security problems. The problems at EMCFW certainly meet this threshold.

**(120)** Plaintiffs believe that the risk to the safety of the female inmate population at EMCFW is growing and that it is urgent for this court to rule on the motions for assignment of counsel, class certification, and for a preliminary injunction so that some relief may be forthcoming for the endangered women at EMCFW.

**(121)** On the date of April 18, 2022, a new policy was implemented at EMCFW in the North and South Hall units whereby the doors of inmate's cells were to be locked and opened only once every 30 minutes. Inmates housed in those units would need to decide whether to be locked in their cells for each 30-minute period or be locked out of their cells for that time. This has created problems for inmates trying to do laundry, heat food in the microwave ovens, take showers, clean their cells, and other seemingly mundane tasks because the policy does not permit their cell doors to remain open except to determine whether they will exit or remain in their cells for the next 30-minute window.

**(122)** Plaintiffs have spoken to other women who were the victims of sexual coercion, sexual assaults and sexual propositions from male alleged transgender inmate Demetrius Minor who are afraid to come forward publicly for fear of being interrogated by the NJDOC SID investigators and possibly shipped out of state or placed in involuntary protective custody. These victims do not desire to be victimized yet again by NJDOC.

**(123)** On the date of April 20, 2022, the inmates in the North Hall and South Hall units were not allowed to come out of their cells after the 11:00 AM head count was complete except by one wing at a time for the lunch movement. The purported purpose of this draconian policy was to "protect the women from the transgender inmates." This was done on orders from Corrections Commander Major Miller. No provisions has been made for inmates to be permitted to leave their cells to do laundry, clean their cells, cook their food, take showers, etc. Inmates in the Hillcrest housing unit were NOT locked in cells or confined to wings, possibly because those units do not contain any pre-operative male-to-female alleged transgender inmates.

**(124)** No due process hearings were given to the women in the North Hall and South Hall units prior to being locked into or out of their cells. Essentially, these women, despite being classified as general population inmates, face conditions of confinement tantamount to those faced by inmates in close custody units. They face a Hobson's choice between staying locked in their cells or being locked out of their cells and deprived of access to their possessions.

**(125)** These changes were implemented after male alleged transgender inmate Demetrius Minor impregnated two female inmates at EMCF and sexually pursued other female inmates. The changes were made even though Minor has been

placed in close custody status and has no physical access to any general population female inmate.

**(126)** The conditions described in paragraphs 121 and 124 are imposed without any due process protection, something which violates the provisions of Chapters 4 (disciplinary procedures) and 5 (close custody unit operation) in Title 10A of the New Jersey Administrative Codes, and also runs afoul of the U.S. Supreme Court decision in *Wilkinson v. Austin,* 545 U.S. 209 (2005) because it constitutes an atypical and severe hardship in relation to the ordinary incidents of prison life.

**(127)** Several of the pre-operative male-to-female alleged transgender inmates were transferred to EMCFW directly from the male administrative close supervision unit in Northern State Prison (Zachery Hoger, Quagee Gibbons), are dangerous, violent and mentally unstable, and were heard to tell other inmates that they though a transfer to EMCFW would result in their release into the general population at EMCFW.

WHEREFORE, plaintiffs Jennifer Pasquarello and Michelle Angelina respectfully move this Court to grant a Temporary Restraining Order for the relief sought herein, and to convene a hearing to determine whether to extend the order to a preliminary injunction, and for whatever further relief this Court deems just and proper.

CERTIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Date: 4/25, 2022        x _____
                        Jennifer Pasquarello, Plaintiff

Date: 4/25, 2022        x _____
                        Michelle Angelina, Plaintiff