**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER PASQUERELLO & MICHELLE ANGELINA,<br><br>Plaintiffs,<br><br>v.<br><br>PHIL MURPHY, et al.,<br><br>Defendants. | Civil Action No. 21-18806 (ZNQ) (DEA)<br><br>**OPINION** |

**QURAISHI, District Judge**

Plaintiffs Jennifer Pasquerello and Michelle Angelina, inmates confined at Edna Mahan Correctional Facility for Women ("EMCFW"), are proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, and state law. (Am. Compl., ECF No. 1-2, Ex. B.) Before the Court are: (1) Plaintiffs' motion to remand (Mot. to Remand, ECF No. 5); (2) Plaintiffs' motion for joinder of claims, class certification and appointment of counsel (Mot. for Joinder, Class Certification, and Appointment of Counsel, ECF No. 13); (3) Plaintiffs' motions for a preliminary injunction (ECF Nos. 14, 35); (4) Defendant Demitrius Minor's motion to dismiss (Def. Minor's Mot. to Dismiss, ECF No. 17); and (5) Defendants Marcus O. Hicks, Al Kandell, Victoria Kuhn, Patricia McGill, and Phil Murphy's (the "State Defendants") motion to dismiss (State Defs.' Mot. to Dismiss, ECF No. 19.) For the reasons below, the Court will: (1) deny Plaintiffs' motions; (2) grant in part the State Defendants' motion to dismiss as to Plaintiffs' federal

claims; (3) *sua sponte* dismiss Plaintiffs' federal claims against Defendants Minor and Carlos Martinez; (4) decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and remand those claims to state court; and (5) deny the remainder of the State Defendants' motion to dismiss and Defendant Minor's motion to dismiss as moot.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

This case arises from the New Jersey Department of Corrections' ("NJDOC") adoption of an internal management procedure titled "Transgender, Intersex and Non-Binary Inmates" (the "Policy") in 2019. (*See* Am. Compl. ¶¶ 4–21; Internal Management Procedure: Transgender, Intersex and Non-Binary Inmates, ECF No. 19-3, Ex. A.) Pursuant to the Policy, the NJDOC houses certain transgender inmates who identify as women but who have not undergone gender-confirmation surgery (the "Pre-operative Transgender Inmates") at EMCFW. (*See* Am. Compl. ¶¶ 4–21; Internal Management Procedure: Transgender, Intersex and Non-Binary Inmates.)[1] Plaintiffs allege that the State Defendants designed and implemented the Policy. (*See* Am. Compl. ¶¶ 4–11.)

---

[1] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id.* Here, the Court considers the Policy without converting the State Defendants' motion into one for summary judgment because the Policy is integral to and explicitly relied upon in the Amended Complaint. (*See* Am. Compl. ¶¶ 4–21.)

2

The Plaintiffs are two female inmates[2] currently incarcerated at EMCFW. (*Id.* ¶¶ 2–3.) According to Plaintiffs, the Policy and the arrival of Pre-operative Transgender Inmates at EMCFW have caused numerous issues within the facility. (*See generally id.*)

For instance, Plaintiffs allege that the Pre-operative Transgender Inmates committed acts of violence, harassment, and threats upon other inmates. Plaintiffs specifically identify several such incidents: (1) on October 21, 2020, two Pre-operative Transgender Inmates "engaged in a physical altercation with each other in the North Hall [U]nit," (*id.* ¶ 30); (2) on an unspecified date, two other Pre-operative Transgender Inmates "engaged in a physical alteration in the South Hall [U]nit," (*id.* ¶ 31); (3) on November 3, 2020, one of the Pre-operative Transgender Inmates engaged in a violent physical altercation with two female inmates, (*id.* ¶ 29); and (4) on November 15, 2020, one of the Pre-operative Transgender Inmates "attempted to entice a female inmate in the North Hall [U]nit to enter the shower . . . for the purposes of engaging in sexual activity," (*id.* ¶ 32.) Plaintiffs also allege that they were victims of verbal harassment and threats. According to Plaintiffs, Defendants Martinez and Minor, two Pre-operative Transgender Inmates, threatened and verbally harassed them over the span of several months. (*Id.* ¶¶ 106–29.) Plaintiffs contend that they suffered emotional anguish, headaches, hypertension, and insomnia as a result. (*Id.* ¶ 110.)

As another example, Plaintiffs further allege that the presence of the Pre-operative Transgender Inmates infringes on their exercise of religion and privacy. Plaintiffs contend that the Pre-operative Transgender Inmates "are able to view female inmates at EMCFW in various stages

---

[2] Plaintiff Michelle Angelina states that she is a post-operative transgender inmate who identifies as female. (*See* Pls.' Cert. in Opp'n to State Defs.' Mot. to Dismiss, ECF No. 28 ¶ 10.)

of undress in their cells (such as when using the toilet[] or when walking to the shower in housecoats to shower themselves[)]." (*Id.* ¶ 40.) "For example, two of the male transsexual inmates . . . have been witness[ed] leering at and making sexually derogatory remarks to women in the RHU unit when those women are engaged in showering, as well as shouting sexually derogatory remarks to women in the RHU and other units." (*Id.*) Plaintiffs contend that "[d]ue to their masculine height . . . , the [Pre-operative Transgender Inmates] can see into the windows in the doors of the women in North Hall at EMCFW when the women are seated on the toilet in their cells." (*Id.* ¶ 42.) Plaintiffs submit that "[m]any of the women at EMCFW have religious beliefs against exposing their partially clad or unclad bodies to members of the opposite sex and are inhibited from using the toilet or showering because of fears of being seen in an undressed condition by the [Pre-operative Transgender Inmates]." (*Id.* ¶ 41.)

Finally, Plaintiffs complain that "female inmates" at EMCFW receive unequal treatment compared to the Pre-operative Transgender Inmates. Plaintiffs allege that officials placed the Pre-operative Transgender Inmates into single cells with private bathrooms in the North Hall Housing Unit and moved the inmates who were assigned those cells into a dormitory-style housing unit. (*Id.* ¶¶ 22–24, 26.) Plaintiffs submit that "[c]isgender female inmates at EMCFW have been disciplined and/or investigated on at least four of five occasions since October 2020 for conduct or speech that allegedly is demeaning or insulting to the [Pre-operative Transgender Inmates,] while not a single [Pre-operative Transgender Inmate] has been disciplined for [similar conduct.]" (*Id.* ¶ 60.) Plaintiffs also contend that officials permit Pre-operative Transgender Inmates "to acquire and wear special clothing, including male underwear" but deny that privilege "to the women." (*Id.* ¶ 65.)

4

Plaintiffs initiated this action on or around June 25, 2021 in the Superior Court of New Jersey, Law Division – Hunterdon County. (Compl., ECF No. 1-2, Ex. A.) Plaintiffs then filed the Amended Complaint on or around August 5, 2021. (*See* Am. Compl.) The Amended Complaint raises nine claims alleging that the Policy and the presence of the Pre-operative Transgender Inmates violate their Eighth Amendment rights to physical safety; their Fourteenth Amendment rights to bodily privacy, equal protection, and substantive due process; their right to be free from religious discrimination under RLUIPA; and their rights under state law. (*See id.*)

On October 15, 2021, the State Defendants filed a notice of removal with this Court. (Notice of Removal, ECF No. 1.) In response, Plaintiffs filed a motion to remand the matter back to state court on November 15, 2021. (*See* Mot. to Remand.)

On December 6, 2021, Plaintiffs filed a motion for joinder of claims, class certification, and appointment of counsel. (*See* Mot. for Joinder, Class Certification, and Appointment of Counsel.) The same day, Plaintiffs also filed a motion for a preliminary injunction. (First Mot. for Prelim. Inj., ECF No. 14.)

On December 13, 2021, Defendant Minor filed a motion to dismiss. (*See* Def. Minor's Mot. to Dismiss.) The State Defendants also moved to dismiss the Amended Complaint on December 17, 2021. (*See* State Defs.' Mot. to Dismiss.)

The State Defendants also filed oppositions to Plaintiffs' motions on December 20, 2021. (*See* ECF Nos. 20–22.) On January 10 and 13, 2022, Plaintiffs filed oppositions to Defendants' motions to dismiss. (*See* ECF Nos. 26–28.) The State Defendants replied to Plaintiffs' opposition to the motion to dismiss on January 20, 2022. (State Defs.' Reply, ECF No. 31.)

Finally, on April 29, 2022, while Plaintiffs' first motion for a preliminary injunction remained pending, Plaintiffs filed a second motion for a preliminary injunction, (Second Mot. for

5

Prelim. Inj., ECF No. 35), which the State Defendants opposed on May 23, 2022, (Defs.' Opp'n to Pls.' Second Mot. for Prelim. Inj., ECF No. 38.) Accordingly, the matter is ripe for determination.

## II. DISCUSSION

### A. Motion to Remand

The Court first addresses Plaintiffs' motion to remand the action to state court. Plaintiffs' sole argument in support of their motion is that Defendants failed to file a timely notice of removal. (Mot. to Remand 4.)

Section 1446 outlines the procedures for removal. Pursuant to that section, a defendant seeking to remove the case must file "in the district court for the district . . . within which such action is pending" a notice of removal "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(a), (b)(1). "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." § 1446(b)(2)(C).

Here, Plaintiffs, by way of the Mercer County Sheriff, served Defendants Murphy, Kuhn, Hicks and Kandell on September 15, 2021. (Sheriff's Return of Service, ECF No. 5 Ex. C.) Thirty days later, on October 15, 2021, those Defendants filed a notice of removal with this Court. (*See* Notice of Removal.) Thus, the notice of removal is timely. *See* § 1446(b)(2)(C).

Plaintiffs complain that they did not learn of the notice of removal until they called the Civil Division Manager Office on October 24, 2021. (*See* Mot. for Removal 4.) Under Section 1446, however, the State Defendants were not required to serve Plaintiffs with notice of removal within thirty days after their receipt of the Complaint. *See* § 1446(a). Instead, Section 1446

requires that defendants give written notice to all adverse parties and to file a copy of the notice with clerk of the State court "[p]romptly after the filing of such notice of removal." § 1446(d). The State Defendants sent written notice to Plaintiffs via the United States Postal Service on October 19, 2021. (Certification of Eric Intriago, ECF No. 20-1 ¶ 4.) Although it is unclear when or even if Plaintiffs received that notice, the Court finds that this is sufficient to satisfy Section 1446(d) because the State Defendants made a good faith attempt at notice and Plaintiffs were not prejudiced as the Civil Division Manager Office notified Plaintiffs of the removal on October 24, 2021. *See Khan v. Bank of Am. Home Loan Servicing L.P.*, 2012 WL 1495592, at *2 (D.N.J. Apr. 27, 2012) (holding that a "good faith effort" to provide the plaintiff with written notice – as opposed to actual receipt of notice – is sufficient as long as the plaintiff does not suffer prejudice). Accordingly, the Court will deny Plaintiffs' motion to remand.[3]

### B.     Motion for Appointment of Counsel

The Court next considers Plaintiffs' motion to appoint counsel to represent them. (Mot. for Class Certification, Joinder, and Appointment of Counsel 15–17.) Plaintiffs' only argument in support is that this Court must assign counsel pursuant to Federal Rule of Civil Procedure 23(g)(1). (*See id.*) That Rule provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).

The Court, however, has not certified a class, and as discussed in the next section, the Court finds that the matter does not warrant class certification. Thus, Rule 23(g)(1) is not applicable. Moreover, although the Court has broad discretion to appoint counsel under 28 U.S.C. §

---

[3] Although the Court denies Plaintiffs' motion to remand, as discussed above, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, and the Court will remand those claims to state court.

7

1915(e)(1), the Court declines to exercise that discretion. As a threshold matter in determining whether to appoint *pro bono* counsel pursuant to Section 1915(e)(1), a district court must consider the merits of a plaintiff's claims. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). As discussed below, Plaintiffs' federal claims lack arguable merit, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, the Court will deny Plaintiffs' motion to appoint counsel.

### C.   Motion for Class Certification

Plaintiffs also move the Court for class certification. (*See* Mot. for Class Certification, Joinder, and Appointment of Counsel 3–13.) Plaintiffs propose that the class consist of "all the female inmates at EMCFW." (*Id.* at 6.)

"Class actions are an exception to the general rule that litigation must be conducted by individual named parties." *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015). A party seeking to bring a class action "must affirmatively demonstrate his [or her] compliance" with Rule 23 of the Federal Rules of Civil Procedure. *Id.* Rule 23 provides that class actions are appropriate only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a). A court must deny certification if any of the requirements set forth in Rule 23(A) are not met. *See Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 245–46 (3d Cir. 1975).

Here, Plaintiffs fail to demonstrate that they would fairly and adequately protect the interest of the class. "It is well settled that pro se inmates are not permitted to represent a class of litigants." *Mincy v. Deparlos*, 497 F. App'x 234, 238 n.3 (3d Cir. 2012). Moreover, Plaintiffs fail to

8

demonstrate that their claims would be typical of the claims of the class. For example, while Plaintiffs do not challenge the housing of *post*-operative transgender inmates at EMCFW, Plaintiffs fail to demonstrate that other inmates' claims would be so limited. Accordingly, the Court will deny Plaintiffs' motion for class certification.

### D.   State Defendants' Motion to Dismiss

The Court now turns to the State Defendants' motion to dismiss. The State Defendants argue that dismissal is appropriate because they are entitled to qualified immunity and because Plaintiffs fail to state a claim against them. (*See generally* State Defs.' Mot. to Dismiss.) The Court addresses each argument in turn.

#### 1.   Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter" to show that its claims are facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678).

9

### 2. Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 644 (2012). The party asserting qualified immunity has the burden of establishing that the doctrine applies. *See Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010).

The qualified immunity analysis generally has two prongs, which a court may address in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). One prong asks whether the facts that the plaintiff has alleged or shown make out a violation of a statutory or constitutional right. *Id.* at 232. The other prong asks whether the plaintiff's asserted right was clearly established at the time of the challenged conduct. *Id.* The latter prong "is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Here, Plaintiffs point to *De Veloz v. Miami-Dade County*, 756 F. App'x 869 (11th Cir. 2018) for the proposition that the rights they assert are clearly established. In that case, the Eleventh Circuit reversed the district court's order dismissing a female pretrial detainee's conditions of confinement claim arising from her erroneous reclassification as a man and placement into the general population of a male detention facility. *See id.* at 876–77. In dicta, the Eleventh Circuit stated:

> In this particular case, no party disputes that placing a female in the general population of a male detention facility . . . posed an unreasonable risk of serious harm to the female's future health or

10

> safety. Nor should they dispute this. It is abundantly clear to us that housing a biological female alongside 40 male inmates poses an outrageous risk that she will be harassed, assaulted, raped, or even murdered.

*Id.* at 877. In addition to its lack of precedential value, the case is factually distinguishable from Plaintiffs' claims in numerous respects. Among them, the plaintiff in *De Veloz* was a pretrial detainee and not a convicted prisoner like Plaintiffs, the right asserted involved the detainee's own housing designation and not the designation of others, and the case did not involve the added administrative challenges of balancing penological interests and the interests of transgender individuals. *See id.* at 876–77. Thus, *De Veloz* does not support Plaintiffs' argument that the rights they assert are clearly established.

The Court's own review of the caselaw reveals no factually similar precedent or a consensus of persuasive authority that would have put reasonable policymakers on notice that their conduct is constitutionally prohibited. *See McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). Rather, to the contrary, the existing caselaw suggests that the rights Plaintiffs assert are not clearly established. *See, e.g., Driever v. United States*, No. 19-1807, 2020 WL 6135036, at *8 (D.D.C. Oct. 19, 2020) (concluding that officials were entitled to qualified immunity from a cisgender female inmate's claims that the Federal Bureau of Prisons' policy of permitting the placement of transgender inmates in women's correctional institutions violates her constitutional rights); *Crosby v. Reynolds*, 763 F. Supp. 666, 668–70 (D. Me. 1991) (concluding that prison officials did not violate a clearly established constitutional right of privacy by housing a female detainee with a pre-operative transsexual who identifies as a woman in the same cell). Moreover, as discussed below, the facts that Plaintiffs allege do not make out a violation of a federal statutory or constitutional right. The State Defendants are therefore entitled to qualified immunity on

11

Plaintiffs' federal claims for damages, and the Court will dismiss Plaintiffs' federal claims with prejudice to the extent they seek such relief.

### 3.     Failure to State a Claim

The State Defendants' entitlement to qualified immunity does not end the inquiry, however, because Plaintiffs also seek declaratory and injunctive relief. Therefore, the Court proceeds to analyze the State Defendants' argument that Plaintiffs fail to state a claim against them.[4]

Plaintiffs bring their federal claims pursuant to 42 U.S.C. § 1983 and RLUIPA.[5] To state a Section 1983 claim, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law;[6] and (2) the conduct deprived the plaintiff of a federally secured right. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1983). In this case, Plaintiffs allege

---

[4] The State Defendants also set forth an alternative argument that Plaintiffs' claims fail under the analysis set forth in the Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). As the Court concludes below that Plaintiffs fail to state a federal claim against the State Defendants based on other pleading deficiencies, it is unnecessary to address their argument that the claims should be dismissed under *Turner*.

[5] To the extent that Plaintiffs assert violations of their federal rights under the New Jersey Civil Rights Act, N.J. Stat. § 10:6-1 to 10:6-2 (the "NJCRA"), the Court does not analyze them separately. "Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart," Section 1983. *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). Accordingly, the Court's analysis as to Plaintiffs' Section 1983 claims applies equally to Plaintiffs' NJCRA claims based on federal rights. As discussed below, the Court declines to exercise supplemental jurisdiction over Plaintiffs' NJCRA claims based on alleged violations of state law.

[6] To the extent that Plaintiffs assert claims under Section 1983 or the NJCRA based on the deprivation of federal rights against Defendants Martinez and Minor, the Court will dismiss them with prejudice *sua sponte* for failure to state a claim because those defendants are not persons acting under color of state law. As a result, the Court will also dismiss Defendant Minor's motion to dismiss as moot.

12

that the State Defendants' design and implementation of the Policy violated their Eighth Amendment rights to physical safety; their Fourteenth Amendment rights to bodily privacy, equal protection, and substantive due process; and their right to be free from religious discrimination under RLUIPA.

"To establish liability under § 1983, each individual defendant 'must have personal involvement in the alleged wrongdoing.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).[7] "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1987). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

Personal involvement may also be shown "based on an establishment of policies, practices, or customs that directly caused the constitutional violation." *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). To establish this type of liability, a plaintiff must identify a specific policy or practice that the defendant failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of a constitutional violation; (2) the defendant was aware that the unreasonable risk was created; (3) the defendant was indifferent to the risk; and (4) that the plaintiff's injury resulted from the existing policy or practice. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001). A defendant's awareness of and indifference to a risk may be proved indirectly by circumstantial evidence. *See id.* Thus, a plaintiff may satisfy the second and third prongs by alleging facts suggesting that the defendant "failed to

---

[7] The personal involvement requirement also applies to RLUIPA claims. *See Jackmon v. N.J. Dep't of Corr.*, 18-149, 2020 WL 3496954, at *3 (D.N.J. June 29, 2020).

respond appropriately in the face of an awareness of a pattern of such injuries" or that the "constitutionally cognizable harm is so great and so obvious that the risk and the failure of [defendant] to respond will alone support findings of . . . knowledge of [an] unreasonable risk[] and [] indifference to it." *See id.*

Here, the Amended Complaint is completely devoid of any allegations that the State Defendants personally participated in violating Plaintiffs' rights or directed others to violate them. The Amended Complaint is also devoid of allegations that the State Defendants had knowledge of and acquiesced to their subordinates' violations of Plaintiffs' rights.

Rather, the State Defendants' only alleged connection to this matter is their design and implementation of the Policy. However, Plaintiffs fail to establish personal involvement premised on the establishment of the Policy because Plaintiffs fail to identify a specific policy or practice that the State Defendants failed to employ, and Plaintiffs fail to plead sufficient facts for the Court to infer reasonably that the State Defendants knew of and disregarded a specific risk of harm that the Policy created. *See Beers-Capitol*, 256 F.3d at 134.

For example, in Counts One, Four, and Nine, Plaintiffs allege that the placement of Pre-operative Transgender Inmates at EMCFW violates their right to physical safety under the Eighth Amendment. (*See* Am. Compl. ¶¶ 76–79, 87–90.) Among other things, Plaintiffs allege that Defendants Martinez and Minor, two Pre-operative Transgender Inmates, repeatedly harassed and threatened them over the span of several months, causing Plaintiffs mental anguish. (*See* Am. Compl. ¶¶ 106–121.) Plaintiffs, however, do not plead sufficient facts for the Court to infer that

14

the State Defendants knew that the Policy created a risk to Plaintiffs' physical safety.[8] Although Plaintiffs allege that a health expert saw Plaintiff Pasquarello because of the mental anguish she suffered from Defendant Martinez's threats, Plaintiffs fail to allege that the health expert passed that information along to any of the State Defendants. (*See id.* ¶¶ 111, 113–15.) Likewise, although Plaintiffs allege that they spoke with the Special Investigation Division and filed numerous grievances about the harassment and threats, Plaintiffs do not allege or plead facts for the Court to infer reasonably that the State Defendants knew of those grievances or had an awareness of a pattern of similar injuries. (*See id.* ¶¶ 112, 115.) Nor is the harm alleged so great and so obvious to support a finding of deliberate indifference. *See Beers-Capitol*, 256 F.3d at 134. Accordingly, Plaintiffs fail to allege that the State Defendants were personally involved in violating Plaintiffs' Eighth Amendment rights.

By way of another example, in Count Two, Plaintiffs allege that the placement of Pre-operative Transgender Inmates at EMCFW "resulted in a violation of the plaintiffs' and class members' [Fourteenth Amendment] right to privacy in the performance of bodily functions such as using the toilet and using the shower." (Am. Compl. ¶ 81.) Plaintiffs contend that the Pre-operative Transgender Inmates "are able to view female inmates at EMCFW in various stages of undress in their cells (such as when using the toilet[] or when walking to the shower in housecoats to shower themselves[)]." (*Id.* ¶ 40.) However, Plaintiffs fail to plead sufficient facts for the Court to infer that they told anyone about their privacy concerns, that the State Defendants were otherwise aware of them or a pattern of similar injuries, or that their privacy concerns are so great

---

[8] The Court need not and does not accept as true Plaintiffs' bald and conclusory assertions that the State Defendants "acted with deliberate indifference" and were "aware of the pervasive risk of harm faced by the Plaintiffs." (*See* Am. Compl. ¶¶ 77–78, 88); *Iqbal*, 556 U.S. at 678.

and so obvious as to support a finding of deliberate indifference. *See Beers-Capitol*, 256 F.3d at 134. Thus, Plaintiffs' fail to demonstrate that the State Defendants were personally involved in violating Plaintiffs' federal rights. Accordingly, Plaintiffs fail to state a federal claim against the State Defendants, and the Court will dismiss those claims without prejudice.[9]

### E.   State Law Claims

Plaintiffs also allege various state law claims against the State Defendants. (*See* ECF No. 1 ¶ 22.) However, as the Court will dismiss all claims for which it has original jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

---

[9] In addition to failing to allege the State Defendants' personal involvement in any of Plaintiffs' federal claims, the Court also notes that the Amended Complaint suffers from numerous other pleading deficiencies. For example, Plaintiffs' RLUIPA claim fails to plead sufficient facts for the Court to infer that Plaintiffs have sincerely held religious beliefs and that the presence of the Pre-operative Transgender Inmates places a substantial burden on their religious exercise. *See Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007) (noting that, to state a claim under RLUIPA, a plaintiff must allege (1) an unreasonable and substantial burden on a (2) sincerely held (3) religious belief).

As another example, Plaintiffs' equal protection claim fails to allege or plead sufficient facts for the Court to infer that Plaintiffs were personally treated differently or that the Pre-operative Transgender Inmates are similarly situated. *See Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992) (noting that, to state an equal protection claim, a plaintiff must allege that she was treated differently from those similarly situated and that this different treatment was the result of intentional discrimination based on her membership in a protected group).

Finally, Plaintiffs' substantive due process claim fails to clearly allege any particular interest that they claim is protected. Instead, Plaintiffs merely incorporate the allegations of their other claims. However, under the more-specific-provision rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Betts v. New Castle Youth Dev. Ctr.*, 621 F13d 249, 254 (3d Cir. 2010). Accordingly, the more-specific-provision rule bars Plaintiffs' substantive due process claims because they are covered by more specific constitutional provisions.

The potential basis for the Court's jurisdiction over Plaintiffs' state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 387 (1998).

Where a district court has original jurisdiction over federal claims and supplemental jurisdiction over state claims, the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Where courts dismiss federal claims at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, as noted above, the Court will dismiss all of Plaintiffs' claims for which it has original jurisdiction for failure to state a claim. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and will remand those claims to state court.[10] Accordingly, the Court denies Defendants' remaining arguments seeking dismissal of Plaintiffs' state law claims as moot.[11]

---

[10] Where a case has been removed from state court and a district court declines supplemental jurisdiction after dismissing all the plaintiff's federal claims, the correct procedure is to remand the state claims for consideration by the state court. *See Borough f. W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

[11] The Court will also deny Plaintiffs' motions for joinder and preliminary injunctions as moot.

## III. CONCLUSION

For the reasons above, the Court will: (1) deny Plaintiffs' motions; (2) grant in part the State Defendants' motion to dismiss as to Plaintiffs' federal claims; (3) *sua sponte* dismiss Plaintiffs' federal claims against Defendants Minor and Martinez; (4) decline to exercise supplemental jurisdiction over Plaintiffs' state law claims; and (5) deny the remainder of the State Defendants' motion to dismiss and Defendant Minor's motion to dismiss as moot. An appropriate order follows.

Date: May 25, 2022

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE